**Donald Craig CERONI, Appellant (Defendant Below),**

v.

**STATE of Indiana, Appellee (Plaintiff Below).**

No. 45A03–9001–CR–42.

Court of Appeals of Indiana, Third District.

Sept. 12, 1990.

Scott L. King, Gary, for appellant.

Linley E. Pearson, Atty. Gen., David M. Sommers, Deputy Atty. Gen., Indianapolis, for appellee.

STATON, Judge.

Donald Craig Ceroni appeals his conviction for dealing in cocaine. He presents us with the sole issue of whether the trial court erred in denying Ceroni's motion to suppress evidence obtained as a result of a warrantless search of a hotel room occupied by Ceroni.

We reverse.

On February 19, 1989, five officers of the Hammond Police Department were dispatched to the Super 8 Motel in pursuit of an individual named Robert Gentry. They were apparently told by the desk clerk that Gentry was in room 124 of the hotel. The officers knocked on the door of the room, which was answered by the appellant, Donald Craig Ceroni. Behind Ceroni stood David Stambolija, whom the officers thought matched the description of Gentry with which they had been provided by the

dispatcher. The parties argued about the description, Stambolija asserting that he had blue eyes, rather than brown eyes as Gentry was described.

Upon entering the room, the officers observed a quantity of loose marijuana and a marijuana cigarette on a table. Several of the officers contained Ceroni, Stambolija, and their two girlfriends while at least one officer searched the drawers, bathroom, and under the bed. In one of the drawers, an officer recovered a black satchel. Upon opening the satchel, the officer discovered drug paraphernalia and 56.8 grams of cocaine. All of the occupants of the room were arrested.

Ceroni's pre-trial motion to suppress the evidence contained in the satchel on the basis that it was the product of an unconstitutional search and seizure was denied, and his objection to the admission of the evidence at trial on the same grounds was overruled.

When reviewing a claim of a violation of a defendant's right to be free from unreasonable searches and seizures, the first line of inquiry is to determine whether the defendant had a personal and legitimate expectation of privacy in the place searched. *Perkins v. State* (1985), Ind., 483 N.E.2d 1379, 1383. The State contends that since the motel room was not rented in Ceroni's name, but he was allowed to stay in it by a friend, he had no legitimate expectation of privacy in it.

A person's hotel room is a "home" for Fourth Amendment purposes. *Mowrer v. State* (1983), Ind.App., 447 N.E.2d 1129, 1132, *transfer denied.* The fact that Ceroni did not rent the hotel room himself does not mean that he had no personal and legitimate expectation of privacy in the property. Such an expectation of privacy is justified if the owner or renter of the premises consents to the aggrieved party's presence in the dwelling. *Jones v. U.S.* (1960), 362 U.S. 257, 267, 80 S.Ct. 725, 734, 4 L.Ed.2d 697, overruled on other grounds 448 U.S. 83. Thus, Ceroni has standing to challenge the search. *Cf. U.S. v. Grandstaff* (9th Cir.1987), 813 F.2d 1353,

1357, *cert. den.* 484 U.S. 837, 108 S.Ct. 119, 98 L.Ed.2d 78.

■ In order to conduct a valid search and seizure, a search warrant is necessary unless the exigencies of the situation mandate an immediate response. *Collins v. State* (1990), Ind.App., 549 N.E.2d 89, 94, *transfer denied.* Here, the State concedes that the officers had no warrant, but contends that the officers in question were conducting a search of the area to protect the officers and prevent destruction of evidence incident to a valid arrest. In support of its position, the State cites *Chimel v. California* (1969), 395 U.S. 752, 89 S.Ct. 2034, 23 L.Ed.2d 685, *reh. den.* 396 U.S. 869, 90 S.Ct. 36, 24 L.Ed.2d 124. We agree that *Chimel* is controlling here, but we reach a different result than that advocated by the State.

■ We note initially that exceptions to the warrant requirement have been strictly construed. *Arkansas v. Sanders* (1979), 442 U.S. 753, 759–760, 99 S.Ct. 2586, 2590–2591, 61 L.Ed.2d 235. There is a presumption that warrantless searches are unreasonable, and the burden is placed on the state to show that the search falls within one of the recognized exceptions to the warrant requirement. *Murphy v. State* (1986), Ind., 499 N.E.2d 1077, 1081, *rehearing denied.* For a search to be valid under the Fourth Amendment, it must be " 'strictly tied to and justified by' the circumstances which rendered its initiation permissible." *Chimel, supra,* 395 U.S. at 762, 89 S.Ct. at 2039, quoting *Terry v. Ohio* (1968), 392 U.S. 1, 19, 88 S.Ct. 1868, 1878, 20 L.Ed.2d 889. Assuming *arguendo* that the police officers' entry into the hotel room without a warrant was permitted, and that the police officers were justified in arresting the occupants of the hotel room including Ceroni after observing the marijuana on the table, we still cannot agree with the State that the search of the drawers and the satchel was constitutionally permissible.

The rationale of the weapons search/destruction of evidence exception and its limits were set out in *Chimel, supra:*

When an arrest is made, it is reasonable for the arresting officer to search the person arrested in order to remove any weapons that the latter might seek to use in order to resist arrest or effect his escape. Otherwise, the officer's safety might well be endangered, and the arrest itself frustrated. In addition, it is entirely reasonable for the arresting officer to search for and seize any evidence on the arrestee's person in order to prevent its concealment or destruction. And the area into which an arrestee might reach in order to grab a weapon or evidentiary items must, of course, be governed by a like rule. A gun on a table or in a drawer in front of one who is arrested can be as dangerous to the arresting officer as one concealed in the clothing of the person arrested. There is ample justification, therefore, for a search of the arrestee's person and the area "within his immediate control"—construing that phrase to mean the area from within which he might gain possession of a weapon or destructible evidence.

There is no comparable justification, however, for routinely searching any room other than that in which an arrest occurs—*or, for that matter, for searching through all the desk drawers or other closed or concealed areas in that room itself.* Such searches, in the absence of well-recognized exceptions, may be made only under the authority of a search warrant. The "adherence to judicial processes" mandated by the Fourth Amendment requires no less.

395 U.S. at 762–763, 89 S.Ct. at 2040, footnote omitted, emphasis added.

This case clearly falls outside of the exception delineated in *Chimel.* The record reveals that the four occupants of the hotel room were confined to the center of the room by three or four police officers, at least six to eight feet away from the drawers from which the contraband was recovered. The State offers the justification that the officers were searching for weapons. The evidence most favorable to the State indicates that at least one of the occupants of the room, Stambolija, was patted down while in the room and no weapons

or contraband was found. At the police station, after a pat-down, a ten inch knife and a quantity of marijuana was recovered from Stambolija. These circumstances indicate that a search for weapons in order to protect the safety of the officers or a need to prevent the destruction of evidence was not the primary concern of the officers on the scene. *Chimel, supra,* at 762, 89 S.Ct. at 2039. On the contrary, the offered rationale was merely a pretext for conducting a search for narcotics. *See Sibron v. New York* (1968), 392 U.S. 40, 64, 88 S.Ct. 1889, 1903, 20 L.Ed.2d 917. We cannot accept the State's justification that one of the captives could have lunged six to eight feet, opened the desk drawer, removed the satchel, reached into the satchel, and recovered a weapon or destroyed evidence before being apprehended by the five armed police officers in the room. We therefore hold that neither the search of the drawer nor the search of the satchel was justifiable by exigent circumstances. The trial court erred in denying Ceroni's motion to suppress the evidence gained from the search.

Although the result in this case is lamentable in light of the quantity of narcotics recovered in the search and the paraphernalia which indicated that the narcotics was being processed and sold, such an end can never justify the means used to obtain it. A defendant is not shorn of his constitutional rights merely because circumstances indicate that he is guilty. In the words of the United States Supreme Court in *McDonald v. U.S.* (1948), 335 U.S. 451, 455–456, 69 S.Ct. 191, 193, 93 L.Ed. 153:

> We are not dealing with formalities. The presence of a search warrant serves a high function. Absent some grave emergency, the Fourth Amendment has interposed a magistrate between the citizen and the police. This was done not to shield criminals nor to make the home a safe haven for illegal activities. It was done so that an objective mind might weigh the need to invade that privacy in order to enforce the law. The right of

privacy was deemed too precious to entrust to the discretion of those whose job is the detection of crime and the arrest of criminals.

The requirements for obtaining a warrant are not complicated, and the circumstances which create the necessity for a warrant arise every day in the course of law enforcement. Here, the police officers need only have removed the arrestees from the hotel room and obtained a warrant to search the remainder of the room, if they felt that there was probable cause to believe that narcotics were present in the room. *Accord, U.S. v. Griffith* (7th Cir. 1976), 537 F.2d 900, 904. Although the procedure may seem a mere formality to those whose everyday job is to obtain them, the failure to obtain a warrant in the absence of exigent circumstances is inexcusable.

Accordingly, we reverse and remand for a new trial.

HOFFMAN, P.J., and ROBERTSON, J., concur.